Filing # 72776210 E-Filed 05/29/2018 04:09:26 PM

IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT
IN AND FOR DUVAL COUNTY, FLORIDA

LEONARDO A. BANES,                    Case No. _____

      Plaintiff,

v.

SAFARILAND, LLC,

      Defendant.

_____/

## COMPLAINT

Plaintiff Leonardo A. Banes ("Plaintiff") sues Defendant Safariland, LLC ("Defendant"), and alleges the following:

### I.      PARTIES, JURISDICTION AND VENUE

1.      Plaintiff, an adult resident of Florida, is permanently and totally blind. As such, Plaintiff uses a "screen reader" when operating a computer. A "screen reader" is a software program that allows blind users to read the text that is displayed on the computer screen with a speech synthesizer and operates as the interface between the computer's operating system, its applications, and it speaks automatically when changes occur on the computer screen.

2.      Defendant is a Delaware limited liability company with its principal place of business located in Jacksonville, Duval County, Florida. Plaintiff is informed and believes, and upon such information and belief alleges, that the website www.safariland.com ("The Website") is owned and operated by Defendant; that Defendant has provided and continues to provide the employment and career opportunities set forth on The Website; and that Defendant maintains and updates The Website.

3.      Personal jurisdiction exists over Defendant under Fla. Stat. §§ 48.193(1)(a)(1), (6) and 48.193(2).

EXHIBIT "A"

Case No.

4.      This Court has subject matter jurisdiction over this action, which arises under the Americans With Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq*., and the ADA Amendments Act of 2008 ("ADA"), because it seeks damages in excess of $15,000.00, exclusive of interest, costs, and fees.

5.      Venue is properly fixed in Duval County, Florida, because Defendant conducts substantial business in this County, because Defendant's principal place of business is located in this County, and because a substantial portion of the wrongdoing alleged herein occurred in this County.

## II.      FACTUAL BACKGROUND

### A.      Background of Online Job Postings.

6.      The Internet has become a significant source of information, a portal and tool for conducting business, recruiting prospective employees, advertising job openings, and providing an efficient and cost-effective method for applicants to submit job applications for both the sighted and blind, and/or visually-impaired persons.  According to data gathered and analyzed by the Statistic Brain Research Institute (www.statisticbrain.org), over 4,000,000 job positions are posted online each month and over 18,000,000 Americans are hired via online job postings every year. In fact, 35.5% of all jobs are filled via postings on the internet.

### B.      The Importance of Access to Online Job Postings for the Visually Impaired.

7.      "75 percent of the estimated 4 million adults in the U.S. who are completely or partially blind are not in the labor force."[1]  Because the employment application process has largely migrated online in recent years, it has become extremely important to ensure that individuals with disabilities who want to enter the workforce, including the visually impaired, be able to apply online for positions.

---

[1] http://work.chron.com/high-rate-unemployment-blind-14312.html.

Case No.

8.      Indeed, the United States Department of Justice ("DOJ") has publicly posted a written statement entitled "Ensuring Access to Jobs for People with Disabilities", which states in relevant part:

> *"Americans with disabilities can face many unnecessary barriers to employment, both during the job application process and on the job. These barriers can prevent people with disabilities from finding and maintaining a job, receiving promotions and ultimately being economically self-sufficient and independent.*
>
> *During the job application process, applicants with disabilities may not want to disclose their disabilities to potential employers for a number of reasons, including the risk that the employer would refuse to hire them because of their disability. Sometimes employers stereotype people with disabilities or take adverse employment actions because of misinformation or ignorance about certain health conditions. Having to disclose a disability can deter people with disabilities even from applying for jobs out of fear of discrimination.*
>
> *Recognizing these real risks, Title I of the Americans with Disabilities Act (ADA) makes it unlawful for an employer to ask about whether an applicant has with a disability or about the nature of such disability before making a conditional offer of employment. . . .*
>
> *Today, many job applications are completed online. Another barrier to employment faced by some people with disabilities, such as those who are blind or have low vision, are deaf or hard of hearing, or have physical disabilities affecting manual dexterity (such as limited ability to use a mouse), is that online job applications are not fully accessible to them. Individuals with these disabilities use assistive technology, such as screen reading software and captions, to access online information. But websites need to be designed to work*

3

Case No.

*with these technologies. Without the ability to access a job application, people*
*with disabilities will not even have the opportunity to apply for a job in the first*
*place. Several investigations conducted by the department found that the public*
*entity's online employment opportunities website or job applications were not*
*fully accessible to people with disabilities.* ***To resolve these violations, the***
***entities must ensure that their online employment opportunities website and***
***job applications comply with the Web Content Accessibility Guidelines 2.0,***
***which are industry guidelines for making web content accessible.***
*Ensuring that job applications are free from unlawful questions and accessible*
*to all applicants is essential to enable people with disabilities to find work and*
*advance in their jobs. With equal access to employment, hardworking*
*Americans with disabilities can contribute as valued members of the workforce,*
*and both justice and economic advancement are served."* [2]

9.    Screen access software provides the only method by which Plaintiff can independently access the internet. Thus, unless websites are designed to be read by screen reading software, Plaintiff and other blind persons are unable to fully access websites and the information and services contained thereon.

10.    As noted in the DOJ statement, the international website standards organization, W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually-impaired people. These guidelines are successfully followed by numerous large business entities to ensure their websites are accessible. These guidelines recommend several basic components for making websites accessible including, but not limited to:  adding invisible alternative text to graphics; ensuring that all functions can be performed using a keyboard and not just a mouse;

---

[2] https://www.justice.gov/archives/opa/blog/ensuring-access-jobs-people-disabilities (last visited April 9, 2018); emphasis added.

Case No.

ensuring that image maps are accessible; and adding headings so that blind people can easily navigate websites. Without these very basic components, a website will be inaccessible to a blind or visually-impaired person using a screen reader.

### C.   The Inaccessibility of The Website to the Visually Impaired.

11.   Defendant "is a United-States-based major designer and manufacturer of equipment for sporting, military, law enforcement, investigation and public safety personnel."[3] In Defendant's own words: "We believe diversity and inclusion make for the best environment and yield extraordinary results. Therefore, The Safariland Group provides equal employment opportunities to all associates and applicants regardless of age, race, color, national origin, sexual orientation, gender identity, disability, religion and any other factor protected by law."[4] Defendant offers a broad variety of positions, including accounting/finance, administrative support, marketing, public relations, and purchasing.[5]  Defendant thus utilizes The Website to recruit potential employees, advertise about specific employment opportunities, and enable applicants to apply for employment online at https://www.safariland.com/employment/jobs-landing.html#sm.0001ugjbuhop8epmtd21gnu0rt.

12.   Plaintiff believes that he would be qualified for one or more of the categories of employment Defendant offers, and wants to explore The Website and apply for a position, or even multiple positions, as appropriate.  Unfortunately, when he attempted to access The Website with his screen reader, he encountered numerous barriers that prevented him from reviewing positions available, and then applying for those positions.  These errors operated as a barrier to Plaintiff's attempt to navigate The Website, learn the details of available positions, and ultimately submit an employment application to the Defendant.  If The Website were accessible, Plaintiff would have

---

[3] https://en.wikipedia.org/wiki/Safariland

[4] https://www.safariland.com/employment/jobs-landing.html#sm.0001ugjbuhop8epmtd21gnu0rt

[5] https://careers-safariland.icims.com/jobs/intro?hashed=-435709878&mobile=false&width=715&height=500&bga=true&needsRedirect=false&jan1offset=-480&jun1offset=-420

Case 3:18-cv-00821-TJC-MCR Document 2 Filed 06/28/18 Page 6 of 11 PageID 27

Case No.

privately and independently investigated Defendant's work opportunities and relevant information about Defendant just as sighted individuals can and do.

**D. Plaintiff's Efforts to Engage Defendant in an Interactive Process Regarding the Website.**

13. The American Bar Association ("ABA") recently noted that "[i]n enacting the 2008 amendments to the Americans with Disabilities Act, Congress made it easier for an individual seeking protection to establish that he or she has a disability. With the amendment's expanded definition of what constitutes a protected disability, the Equal Employment Opportunity Commission estimates that the resulting increase in reasonable accommodations requested by employees and job applicants and required of employers could range from 2 million to 6.1 million." Among other things, the ABA sets forth a scenario for an "interactive process" between the employee and the employer, including other appropriate personnel, whereby the employee's issues and needs for accommodation may be addressed.[6]

14. Defendant has spurned all efforts by Plaintiff to engage in an interactive process concerning the accessibility of The Website to Plaintiff. Specifically, on April 2, 2018, Plaintiff made his first request for a reasonable accommodation to enable him to submit a job application to Defendant. Specifically, his counsel wrote to Defendant as follows:

*I am writing to you on behalf of a blind Florida man named Leonardo [Banes]. He wants to re-enter the workforce and tried to apply for an open service position with you through your corporate website, but was unable to do so because he is blind and because your website contains barriers to blind people. I request that you accommodate him by removing the barriers on your website. If you would like, I can provide you with a summary of those barriers.*

*It is simple and inexpensive to make your website accessible to blind job applications*

---

[6] https://www.americanbar.org/publications/youraba/2015/november-2015/best-practices-for-accommodating-workers-with-disabilities.html.

6

Case No.

*– in fact, the National Foundation for the Blind's website has a "tool kit" that shows how:       http://www.afb.org/info/accessibility/afb-accessibility-resources/23. Mr. Baines is a hard worker who would be an asset to your company. Thus, I am again requesting that you promptly remove those barriers for him so that he can submit an application like everyone else.*

*Thank you for your consideration. I would appreciate it if you would remove these barriers within the next week and confirm that you have done so. If you need any additional information about Mr. [Banes] or if I can provide you with any additional details to assist in your decision, please contact me.*

15.     Defendant did not respond to Plaintiff's first request for accommodation.

16.     On April 6, 2018, Plaintiff made his second request for reasonable accommodation. Specifically, his counsel wrote:

*A few days ago, I have twice requested your help in enabling a blind man named Leonardo [Banes] to apply for an open entry-level position with you. The position is one of many being advertised on your website and is one for which he is well-qualified. I did not get a response, so I am following up.*

*The United States Department of Justice has stated that "Work is a fundamental part of adult life for people with and without disabilities. It provides a sense of purpose, shaping who we are and how we fit into our community. Meaningful work – being a contributing part of society – is essential to people's economic self-sufficiency, as well as self-esteem and well-being." Unfortunately, It is estimated that only 34 percent of working age American citizens with disabilities like my client are employed – compared to 75 percent of their non-disabled peers. You can help change that!*

*My client is permanently and totally blind; as such, he uses a "screen reader" when operating a computer. A "screen reader" is a software program that allows blind users to read the text that is displayed on the computer screen with a speech synthesizer*

7

Case No.

*and operates as the interface between the computer's operating system, its*
*applications, and it speaks automatically when changes occur on the computer screen.*
*Most companies' websites are configured in a way to enable blind people using screen*
*readers to navigate the site. Yours is not; as a result, he cannot navigate your website*
*to learn more about open positions or apply for the position online, like your website*
*recommends.*

*I can give you a summary of the problems. I will even give you a referral to an expert*
*who can help you remove the barriers in just a few hours time. I don't know why you*
*have not responded. If you need any more information about his disability, his request*
*for accommodation, documentation of his disability, just let me know.*

*Please do the right thing and remove the barriers within seven days — or, at the very*
*least, work through the interactive process with him and provide an alternative*
*suggestion that will allow him to apply for a job with you.*

*You are hiring and he is qualified for several positions. He is a good man, a good*
*worker, and he needs a job!*

17.     For the second time, Defendant provided no response to Plaintiff's request.

18.     Defendant thus has ignored Plaintiff's requests, and has effectively denied Plaintiff's requests for accommodation without investigating it and taking any action to remediate the flaws in The Website, forcing Plaintiff to conclude that Defendant is refusing to allow him, ultimately, to submit an application due to his blindness. As such, Plaintiff has had to move on in his job search.

19.     Based on information and belief, and based on Plaintiff's personal experience with Defendant as described above, it is Defendant's policy and practice to deny blind individuals, including Plaintiff, equal access to employment by refusing to engage in an interactive process with Plaintiff and then by refusing to remove communication barriers to blind individuals that are contained on The Website, notwithstanding Defendant's own words on The Website that it does

8

Case No.

not discriminate based on disability. As such, Plaintiff has been and is being denied equal access to the information concerning specific work opportunities offered to non-disabled individuals and is being prevented from submitting an application for employment to Defendant. Under these circumstances, Defendant is discriminating against Plaintiff by virtue of his disability.

## III.    CAUSE OF ACTION

### COUNT I:  CLAIM FOR FAILURE TO ACCOMMODATE
### IN VIOLATION OF THE ADA

20.    Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

21.    Plaintiff is a qualified individual with a disability under the ADA. Specifically, Plaintiff is completely blind.

22.    As detailed herein, Plaintiff has attempted to access The Website in order to explore employment with Defendant and, as appropriate, to apply for a position or positions with Defendant. Due to the inaccessibility of The Website, Plaintiff has been unable to explore or apply for such employment with Defendant.

23.    Additionally, Plaintiff, through counsel, has contacted Defendant in an effort to engage in an interactive process to rectify the flaws in The Website and to accommodate Plaintiff's disability. Specifically, Plaintiff has asked Defendant to remediate the barriers to access to The Website affecting the visually impaired, including Plaintiff, thereby allowing the visually impaired to explore employment with Defendant.

24.    Defendant has failed and refused, and continues to fail and refuse, to engage in an interactive process with Plaintiff and to remediate the barriers to access to the Website affecting the visually impaired, including Plaintiff. Accordingly, it is Defendant's policy and practice to deny blind individuals, including Plaintiff, equal access to employment by refusing to remove communication barriers to blind individuals that are contained on The Website. As such, Plaintiff has been and is being denied equal access to the information concerning specific work

9

Case No.

opportunities offered to non-disabled individuals and is being prevented from submitting an application for employment to Defendant. Under these circumstances, Defendant is discriminating against Plaintiff by virtue of his disability.

25.     Under these circumstances, Defendants failed to properly accommodate Plaintiff in that Defendant has failed and refused, and continues to fail and refuse, to remediate the access barriers to the visually impaired on The Website.

26.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

27.     At all times material hereto, Defendants engaged in unlawful and discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of punitive damages.

28.     The above-described acts by Defendant constitute a failure to accommodate in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A.     General and compensatory damages in a sum according to proof at time of trial;

B.     Consequential and incidental damages in a sum according to proof at time of trial;

C.     Payment of Plaintiffs reasonable and actual attorney fees in a sum according to proof at time of trial;

D.     For costs of suit herein incurred;

E.     Injunctive relief;

F.     Pre-judgment interest at the legal prevailing rate;

G.     Punitive and exemplary damages in a sum according to proof at time of trial; and

H.     For such other and further relief as the Court deems just and proper.

10

Case No.

Dated this 29th day of May, 2018.

Respectfully submitted,
By: /s/    Benjamin H. Brodsky
Benjamin H. Brodsky, Esq., FBN 73748
Jason B. Sherry, Esq. FBN 102218
bbrodsky@bfwlegal.com
jason@bfwlegal.com
docketing@bfwlegal.com
Brodsky Fotiu-Wojtowicz, PLLC
*Counsel for Plaintiff*
200 SE 1st Street, Suite 400
Miami, Florida 33131
Tel:  305-503-5054
Fax: 786-749-7644

11